

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH:LZ
F. #2018R02067

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 29, 2023

<u>By ECF</u>

The Honorable William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Robert Gala
                <u>Criminal Docket No. 20-403 (WFK)</u>

Dear Judge Kuntz:

      The government respectfully submits this letter in advance of the defendant Robert Gala's sentencing.  In light of the factors set forth in 18 U.S.C. § 3553(a), the government recommends that the Court impose a sentence at the low end of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range as estimated in the plea agreement, that is, 33 months' imprisonment.

I.    <u>Background</u>

      A.    <u>The Offense Conduct</u>

      This case arises from an investigation of a robbery in which the defendant impersonated a New York City Police Department ("NYPD") officer and stole property from a drug dealer (the "Victim").  Presentence Investigation Report dated January 12, 2023 ("PSR") ¶ 10.  Prior to the robbery, the Victim made arrangements to sell a prescription pill bottle containing oxycodone to a man (the "Buyer") for $20 per pill.  <u>Id.</u> ¶ 16.  The Buyer asked the Victim to meet him in the area of 17th Avenue and 63rd Street in Brooklyn, New York.  <u>Id.</u>

      On July 24, 2017, as the Victim walked on 63rd Street, in the direction of 17th Avenue to meet the Buyer, the defendant approached the Victim.  <u>Id.</u>  The defendant displayed a gold shield, ordered the Victim to place his hands on the wall, pushed him towards a wall and restrained the Victim using plastic handcuffs.  <u>Id.</u>  The defendant also displayed what appeared to be a police radio.  <u>Id.</u>  The defendant then searched the Victim's

pockets and removed a prescription pill bottle containing 180 oxycodone pills. Id. The defendant walked away from the Victim and entered the passenger side of a waiting vehicle, which then departed the scene. Id. ¶ 11.

### B. The Investigation

The Victim immediately called 9-1-1 and the police responded. Id. ¶ 10. Law enforcement authorities obtained surveillance video from multiple sources (collectively, the "Surveillance Video") which depicted portions of the above-described events. Id. ¶ 12. On or about September 19, 2017, an excerpt from the Surveillance Video was played on multiple New York City news outlets in hopes that a viewer would recognize the assailant and identify him to law enforcement authorities. Id. Subsequently, an anonymous tipster identified the defendant as the assailant depicted in the Surveillance Video excerpt. Id. An NYPD Detective ("Detective-1"), who had previously arrested the defendant on July 21, 2017 for possession of an imitation pistol, unlawful use of a police emblem, and unlawful possession of handcuffs, in violation of New York administrative code §§ 10-131(g)(1), 14-107, and 10-147, respectively, then reviewed the Surveillance Video.[1] Id. ¶ 13. Detective-1 identified the defendant as the assailant depicted in the Surveillance Video. Id. The Victim subsequently identified the defendant in a photographic array as the perpetrator of the July 24, 2017 robbery. Id. ¶ 14.

### C. The Defendant's Arrest and Post-Arrest Conduct

On September 9, 2020, the defendant was charged by complaint in the Eastern District of New York with interference with commerce by threats or violence, in violation of Title 18, United States Code, Section 1951.[2] See ECF No. 1. On September 15, 2020, the defendant was apprehended at a residence in Brooklyn, New York by members of the Federal Bureau of Investigation ("FBI") and NYPD. PSR ¶ 17. Later the same day, the Honorable Lois Bloom arraigned the defendant on the complaint and ordered the defendant released on a $150,000 bond secured by one surety. Among other things, the conditions of release included that the defendant "must not violate any federal, state or local law" and "must refrain from use or unlawful possession of a narcotic drug or other controlled substances as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner." See ECF Nos. 3, 4.

---

[1] The defendant was not a member of the NYPD or any other law enforcement agency at the time of his prior arrest by Detective-1 on July 21, 2017, which occurred just three days prior to the instant offense. The prosecution in connection with that arrest was dismissed upon motion of the Richmond County District Attorney's Office on or about October 30, 2017, due to an uncooperative witness.

[2] On September 25, 2020, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951. See ECF No. 6.

Despite the condition of release requiring that the defendant refrain from drug use, the defendant repeatedly tested positive for illegal drugs, including cocaine, morphine, and fentanyl, following his release on bond. See United States Pretrial Services Agency ("Pretrial Services") Mem., March 11, 2022. In response, Pretrial Services increased the defendant's outpatient drug treatment services and ultimately referred the defendant for long-term residential drug treatment on numerous occasions. Id. On March 11, 2022, Pretrial Services informed the Court that the defendant had tested positive for drugs for the 26th time while on supervision, and requested a bond revocation hearing for the defendant. Id. On or about April 19, 2022, while the bond revocation hearing was pending before this Court, the defendant was found in possession of a bottle of Gabapentin, a prescription anticonvulsant and nerve pain medication, at his impatient drug treatment program. See Pretrial Services Mem., April 21, 2022. As a result of the defendant's repeated non-compliance and dishonesty, the defendant's impatient drug treatment program discharged the defendant. Id.

II.   Guilty Plea and Guidelines Calculations

On June 1, 2022, the defendant pled guilty to Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951. PSR ¶ 20. The government agrees with the United States Probation Department's calculation of the Guidelines applicable to the defendant, as set forth below:

| | | |
|---|---|---|
| Base Offense Level (§2B3.1) | | 20 |
| Plus: Victim was physically restrained (§2B3.1(b)(4)(B)) | | +2 |
| Plus: Controlled substance was taken (§2B3.1(b)(6)) | | +1 |
| Less: Acceptance of responsibility (§§ 3E1.1(a), 3E1.1(b)) | | -3 |
| Total: | | 20 |

PSR ¶¶ 21-32. The total adjusted offense level is 20, which, based on a Criminal History Category of I, carries an advisory Guidelines range of 33 to 41 months' incarceration.[3] Id. ¶ 84.

III.   Applicable Law

---

[3] In his plea agreement with the government, the defendant stipulated to the aforementioned Guidelines calculation. See ECF No. 77.

3

In <u>Gall v. United States</u>, 552 U.S. 38 (2007), the Supreme Court set forth the procedure that sentencing courts must follow in light of <u>United States v. Booker</u>, 543 U.S. 220, 258-60 (2005):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

<u>Gall</u>, 552 U.S. at 49 (citation omitted). Next, a district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." <u>Id.</u> at 49-50 (citation and footnote omitted).

Section 3553(a) directs the sentencing court to consider the following factors, among others, when imposing a particular sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

At sentencing, "the court is virtually unfettered with respect to the information it may consider." <u>United States v. Alexander</u>, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV.     The Appropriate Sentence

The government submits that a sentence at the low end of the Guidelines range of 33 to 41 months' incarceration is sufficient but not greater than necessary under the circumstances in this case.

The defendant's crime—the taking of property by force—is undoubtedly serious. Under the guise of legal authority, the defendant deliberately sought out the Victim, pushed and physically restrained him, and stole straight from his pockets. A Guidelines sentence in this case would reflect the serious nature of the offense and promote respect for the law. The government acknowledges the defendant's substance addiction history. However, a sentence at the low end of the Guidelines is nonetheless necessary under the facts and circumstances of this case to provide adequate specific and general deterrence, and to provide just punishment.

Deterrence is particularly important here, since the conduct was carefully planned. During the July 21, 2017 arrest for possession of an imitation pistol, unlawful use of a police emblem, and unlawful possession of handcuffs detailed above, the defendant was found in possession of five police style shields, handcuffs, two air pistols, holsters and plastic zip ties. PSR ¶ 39. Plainly, the defendant's conduct was no mistake; he was prepared and he had stocked up on just the sort of paraphernalia that would permit him to impersonate a law enforcement officer convincingly. Critically, his arrest on July 21, 2017 did not deter him from committing the instant conduct on July 24, 2017. A significant sentence is necessary to deter the defendant from committing similar crimes in the future.

V.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 33 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By: _/s/ Laura Z._

Laura Zuckerwise
Assistant U.S. Attorney
(718) 254-6204

cc:     Clerk of Court (WFK) (by ECF)
        James Walden, Esq. (by ECF and e-mail)
        Alexander Khan, Esq. (by ECF and e-mail)